## PALMER v. STATE.

HOMICIDE — SELF DEFENSE — ASSAULT UPON ANOTHER IN HIS OWN HOUSE — INSTRUCTIONS — EXCEPTIONS — TRIAL.

1.  The law does not permit one who is assailed to take life unless it is apparently necessary under the circumstances; but when a person is assaulted in his own house, he is deemed to be "at the wall," and no further retreat is required.

2.  Every man has the right to pursue his peaceful avocations in his own house and about his own premises, unmolested by threats or violence, or unlawful interference by any other person or persons: and if, while pursuing these avocations, he is violently attacked in a manner indicating a purpose to perpetrate a known felony upon him, such as murder, mayhem, or the like, under such circumstances he is not obliged to retreat, but may pursue his adversary until he has freed himself from all danger.

3.  The trial court in a homicide case having given a correct instruction as to the right of a man to defend himself in his own house, when assailed, without retreating, but having also given other instructions in direct conflict with it, and erroneous, and the instruction upon the question being material, a judgment upon a verdict of guilty must be reversed, since the appellate court can not know whether the jury followed the correct or erroneous statement of the law.

4.  Objection was made generally to instructions given for the prosecution, after the same were read to the jury. It did not appear that opportunity was previously afforded counsel to see the instructions and make objection; and the defense presented instructions antagonistic to those given on behalf of the State, which were approved. *Held*, that there was no presumption that the defense was consenting to the instructions for the State, and objection was made in time: and *held further* that, as the instructions for the State presented as a whole an erroneous view of the law as applied to the facts of the case, the exception as made was sufficient.

5.  One who starts out upon an expedition which involves a felonious assault upon another in his own house, takes his life in his hand, and the right to take it from him depends only upon the apparent necessity which he himself may create. The person so assaulted has the right to defend

himself, and to pursue his adversary until he has freed himself from all danger. Whether in any case a defendant having killed his assailant while assaulted in his own house has kept himself within the law, is an issue which, if in the case, should be presented to the jury for their decision under proper instructions.

[Decided January 13, 1900.]

Error to the District Court, Uinta County, Hon. David H. Craig, Judge.

Louis T. Palmer was charged with murder, and convicted of manslaughter, and prosecuted error. The facts are stated in the opinion.

*M. C. Brown*, for plaintiff in error.

It has long been the practice in the district where this case was tried that every ruling of the court should be considered as excepted to without counsel at the time making his specific objection or exception, and on this theory the case was tried; so it can not be claimed that the exception to the instructions was not taken in time. Such a practice takes a case out of the general rule. (2 Thomp. Tr., Sec. 2394; Winchell v. Hicks, 18 N. Y., 558; Dowes v. Rash, 28 Barb., 157; 24 How. Pr., 333; Jencks v. Smith, 1 N. Y., 90; Timbrook v. State, 18 Tex. App., 1; Burke v. State, 15 id., 156.)

The instructions given on the part of the State were based on a state of facts not existing in the case. The doctrine of retreating was emphasized without referring to the fact that defendant was attacked in his home. That was grave error. Such instructions were inapplicable to the case in hand. One assailed in his own house is not bound to retreat therefrom, but may resist the invasion for the purpose of committing a felony or doing a personal violence to the inmates, and may justifiably take life if necessary, without retreating from threatened danger. (McLain Crim. L., Sec. 312; Pond v. People, 8 Mich., 150; People v. Lilly, 38 id., 270; Miller v. State, 74 Ind., 1;

State v. Harmon, 78 N. C., 515; Brown v. State, 55
Ark., 593; Beard v. U. S., 148, U. S. 550; Irwin v. State,
29 O. St., 186; People v. Schryver, 42 N. Y., 1; 1 Am.
R., 480; State v. Patterson, 45 Vt., 308; Bohannon v.
Com., 8 Bush, 481; Hurd v. People, 25 Mich., 405;
Greschia v. People, 53 Ill., 256; Reins v. People, 30 id.,
256; Carroll v. State, 23 Ala., 28; Whart. Crim. L., Sec.
1024; Russell Crim. L., Sec. 668.)

A party is not required to make an objection before an
instruction is given, and before the defendant can know
what is in the mind of the court.

*J. A. Van Orsdel*, Attorney General, for the State.

Under the practice in this State, an objection must be
taken at the time; and in this case the remarks of the trial
judge in the bill show that the exceptions to the instruc-
tions were not taken in apt time.    It is not the policy of
our law to allow a trial to run at loose ends.    At every
step the trial judge should be given an opportunity to cor-
rect an alleged error.    Such is the policy of our mode of
practice.    The rule as to the right of a man attacked in
his own home is not applicable to this case, for the reason
that the evidence shows that the defendant was the more
powerful man, and, in every encounter they had, he seemed
to have no difficulty to overcome his opponent; and that
opponent was not armed, and made no attacks upon the
defendant except with his fists.    Again, the defendant in
his testimony was silent as to any fear which he had at
the time.    Under self defense, it is essential that the de-
fense prove that the defendant was in fear of losing his
life, when he took the life of his assailant.    If a party de-
sires an instruction upon a particular point he must request
a proper one, and can not complain of the omission in
case he has failed to make a request for one and presented
a proper one.    (People v. Raher, 92 Mich., 165; Winn
v. State, 82 Wis., 571; Dove v. State, 22 Ala., 23;
Mead v. State, 53 N.J. L., 601; State v. Marqueze, 45 La.
Ann., 41; State v. O'Neal, 7 Ired., 251; State v. Jackson,

112 N. C., 851; 97 Cal., 459; Burns v. Com., 3 Metc. Ky., 13; McMeen v. Com., 114 Pa. St., 300; People v. Marks, 72 Cal., 46; State v. Anderson, 26 S. C., 599; State v. Brooks, 92 Mo., 542.) The instructions correctly stated the law as applicable to the case.

Corn, Justice.

The defendant (plaintiff in error) was tried upon an information charging him with the murder of one Joseph Demars, found guilty of manslaughter, and sentenced to the penitentiary for a term of ten years. He claimed that the shooting was done in self defense, and says that he did not have a fair trial for the reason, among others, that the jury was erroneously instructed. By the motion for a new trial instructions 8, 9, and 11, given upon the request of the prosecution, were specially pointed out as erroneous and prejudicial to the defendant.

For the purpose of testing the instructions a brief statement of certain facts which characterized the case will be sufficient. Defendant and deceased were at a dancing party where deceased, being partially intoxicated, sought a quarrel with defendant, which he tried to avoid. Deceased finally assaulted him about one o'clock in the morning, but defendant got the better of it, and deceased cried, enough. Deceased shortly afterward went to sleep in a room near the hall where the dancing was, and the defendant being warned that he had better look out for Demars, that he intended to attack him again, and that he was a "hard man," in order to avoid any further difficulty, got on his horse and went home, a distance of about seven miles, lay down and went to sleep. Demars woke about daylight and was looking for defendant, threatening that he would beat him to death; that he would kill him before sundown, etc. At this time deceased was sober. Upon being informed that Palmer had gone home, he immediately started after him, saying that he would kill him before night. Upon reaching the defendant's place, he pushed or burst open the door, which was fastened upon the inside by a wooden button, and assaulted Palmer in

bed by striking him on the head with his fist. They again fought, deceased repeating that he would beat him to death before night, kill him before the sun went down, etc. Defendant got the better of him, and deceased said he would quit. Upon being released Demars returned to the attack, repeating his threats. This occurred two or three times. No one was at the ranch but deceased and defendant. In concluding his statement of the transaction from the witness stand, defendant testified: "I was pretty near worn out. I was tired of fighting. I saw he was going to wear me out — do me up, and I caught him by the throat. He was trying to bite me all the time we were scuffling. He did come near biting me two or three times — bit my hand. I got loose from him and run for the pistol that was hanging in the kitchen. I run and opened the door, reached for the pistol, grabbed it out of the scabbard and whirled around; when I turned round he was on his feet coming towards me. I fired at him. He went down towards the foot of the bed. I kept on shooting and shot two more shots, and when I quit shooting he was there lying on his face. I went out of the room and got my horse and went over and told Mr. Handley what I had done, and got him to come back to the ranch, and sent for the justice of the peace to come." The proof was that the reputation of the deceased as a peaceable man was bad. The foregoing statement is not given as the only conclusion which the jury could reach upon a consideration of the whole case; but as a conclusion which they were authorized to reach under the evidence, and which the court, not being empowered to pass upon the weight of the evidence, could not reject in giving its charge to the jury. But that the deceased was the aggressor; that he pursued the defendant to his own home and repeatedly assaulted him there, while at the same time expressing his determination to kill him before night, are facts which are not controverted by the prosecution.

With these facts characterizing the case, all instructions which informed the jury that it was the duty of the de-

fendant to retreat before he would be justified in whatever resistance might be, or might reasonably seem to be, necessary against the assault of the deceased, were necessarily inapplicable to the evidence, misleading and prejudicial to the defendant.    It is not the law that one assaulted in his own house must retreat, provided he can do so without increasing his own danger, before he may lawfully reresist, even to the taking of the life of his assailant.    It is unquestionably true that the law does not permit one who is assailed to take life unless it is apparently necessary under the circumstances.    But the two propositions are not in conflict.    He must not take life except in case of apparent necessity, but the law does not require that he shall avoid the necessity by retreating before his assailant.    His house is his castle, and when it is invaded, he is deemed to be "at the wall," and no further retreat is required.    2 Bish., C. L., 653; Pond v. The People, 8 Mich., 177; Erwin v. State, 29 O. S., 188.

The defendant in this case had retreated seven miles to his own home, and there is no intimation whatever in the evidence that it was not in good faith to avoid any further difficulty with the deceased.    But under these facts, in one of the instructions complained of is found the following language:    "If the defendant went out of the room where he had had a difficulty with the deceased, and went into the kitchen for the purpose of getting his gun, and after getting his gun returned into the room to seek a further difficulty with the deceased, or if, after being outside the room, he could have withdrawn from the danger (if you find from the evidence that there was danger at the time) with safety, it was his duty to retreat.    Between his duty to retreat and his right to kill, he must retreat if he could do so with safety.    By retreat is only meant that a party must avail himself of any apparent and reasonable avenues of escape by which his danger may be averted, and the necessity of striking his assailant avoided.    But if the attack is of such a nature, or the weapon of such a character, that to attempt to retreat might increase the

danger, the party need retreat no further.'' This state-
ment of the law is apparently the result of an attempt to
adapt to the circumstances of this case an instruction
which we find approved in People v. Iams, 57 Cal., 119.
In that case the evidence showed that defendant and de-
ceased were talking together. Defendant was heard to
tell the deceased to come out with whatever he had. De-
ceased said he had nothing to come out with except a
pocket knife. Deceased was holding an armful of wood
at that time. Defendant then had his pistol in his hand.
Defendant then told deceased to look out, and deceased
then threw his armful of wood down and threw up his
arms, standing still, and telling the defendant to shoot if
he wanted to. Defendant immediately shot the deceased
three times. The deceased was not seen to make any per-
ceptible advance on the defendant, or to have any weapon
or arms of any kind. Defendant relied for his defense
upon the fact that deceased had formerly threatened him.
The facts in the two cases are in such contrast that it is
not surprising that the attempt to adapt the instructions
in the one to the other should result in giving to the jury
for their guidance legal principles inapplicable to the
facts and prejudicial to the defendant.

Again, in the eighth instruction, given upon the request
of the prosecution, this language is used: ''If one is
attacked by another in such a way as to denote a purpose
to take away his life, or to do him some great bodily
harm from which death or permanent injury may follow,
in such a case he may lawfully kill his assailant. When?
Provided he use all the means in his power otherwise to
save his own life or prevent the intended harm, such as
retreating or disabling him without killing him, if it be in
his power.'' In a similar case the supreme court of
Ohio condemned an instruction on account of language
almost identical with that above quoted. The court say:
''Under the charge below, notwithstanding the defend-
ant may have been without fault, and so assaulted, with
the necessity of taking life to save his own upon him, still

the jury could not have acquitted, if they found he had failed to do all in his power otherwise to save his own life, or prevent the intended harm, as retreating as far as he could, etc. In this, we think the law was not correctly stated." Erwin v. The State, 29 O. S., 200.

Again, in the ninth instruction the court uses this language: "A man assailed upon his own grounds, without provocation, by a person armed with a deadly weapon and apparently seeking his life, is not obliged to retreat, but may stand his ground and defend himself with such means as are within his control; *and so long as there is no intent on his part to kill his antagonist,* and no purpose of doing anything beyond what is necessary to save his own life, is not guilty of murder or manslaughter if death results to his antagonist from a blow given him under such circumstances." From this statement the jury must necessarily have inferred that if the killing was intentional the defendant could not be excused or justified, although he was assailed upon his own grounds, without provocation, by a person seeking his life, and although the killing was necessary to save his own life. That this is not the law is so clear as to require no reference to authorities. Indeed, the instructions describe with substantial accuracy the defense which is permissible in protecting one's property, or in repelling an assault where there is no apparent intention upon the part of the assailant to kill or do great bodily harm. 2 Bish. Cr. L., 641, 642. It falls very far short, however, of stating the law when the assault is made upon one in his own house, and is of such a nature as to indicate the intention of his assailant to inflict upon him death or great bodily harm. We think the law is very well stated in the thirteenth instruction given upon the request of the defendant: "Every man has a right to pursue his peaceful avocations in his own house and about his own premises unmolested by threats, or violence, or unlawful interference by any other person or persons, and if while pursuing these avocations he is violently attacked in a manner

indicating a purpose to perpetrate a known felony upon him, such as murder, mayhem, or the like, under such circumstances he is not obliged to retreat, but may pursue his adversary until he has freed himself from all danger. 2 Bish. Cr. L., 636. But it is apparent that this statement of the law is inconsistent with that contained in the other parts of the charge before referred to. That it was material can not be doubted. Indeed, it went to the very substance of the defense. In such cases the judgment must be reversed, for this court can not determine whether the jury followed the correct or erroneous statement of the law. 2 Thompson on Trials, 2326. State v. Peel (Mont.), 59 Pac., 174.

It is objected, however, that the exceptions to the charge were not sufficiently preserved, and are not properly before this court for its consideration. In allowing the bill of exceptions the court says: "And the court having examined the said bill of exceptions at length and finding the same correct, except in this, that no exceptions or objections were made or taken to any of the instructions given for the prosecution, and set forth as grounds for a new trial by the defendant, at or before the time said instructions were given and read to the jury, objection being made generally to all of the instructions given for the prosecution after the same were read to the jury, and the court now here in open court approves the same and orders that it be filed and made a part of the record in this case." The rule under our statute is that the party objecting to a decision of the court must except at the time the decision is made, and this court has no disposition to relax the rule. But it must have a reasonable construction. The exception must be taken in time and be sufficiently specific to point out the matter complained of so that the trial court may have opportunity to correct its own errors. The law does not contemplate that a defendant may permit his case to be tried in the court below upon one theory without objection, and then come into this court to complain that another was the true one. But

that is not this case.    There is no intimation that the instructions were submitted to counsel for the defendant before they were read to the jury, or that counsel consented or failed to object to the statement of the law contained in them.    So far as appears, the first opportunity to object was when they were read to the jury.    There is certainly no presumption that they were consenting when they had asked for and had obtained the approval of the court to instructions directly antagonistic to those given on behalf of the State.

We think also the character of objection made was sufficient in this case.    It was to the charge itself, the law of the case as embodied in the instructions for the State. We are cited to numerous cases where it has been held that a failure of the court to state a pertinent legal principle, when it has not been requested, is not error; as for instance, a failure to define the terms, "malice," "reasonable doubt," or the like.    But the distinction is plain.    If counsel desire to have the jury instructed more in detail than the court may deem necessary, they must ask for such instructions, otherwise it is reasonable to presume they concurred with the court in the opinion that the jury was sufficiently informed as to such matters.    Or they may have deemed that they could present to the jury in argument a definition or explanation which would be more favorable to their client's case than one which the court might give.    No such considerations apply here.    The defense requested instructions which they deemed applicable to the case, and objected to the instructions for the State as a whole as presenting an inconsistent and erroneous view of the law as applied to the facts.    In all cases the charge to the jury should disclose the law applicable to whatever facts the evidence tends to establish, not to any which it does not.    1 Bish. Cr. Law, Sec. 387.    We think the instructions for the State as a whole present an erroneous view of the law as applied to the facts of this case, and that the exception was sufficient.

It will be understood that there is nothing in this opin-

ion which withdraws from the jury any issue of fact involved in the case. Whether the defendant at the time was under an apparent necessity to kill his assailant, and whether the killing was prompted by such necessity, or by other motives, are questions to be determined by the jury. But it was uncontroverted upon the former trial that the deceased, after assaulting the defendant and threatening his life, pursued him, invaded his house, and assaulted him there with the avowed purpose of killing him. Under the conditions in this State the rule of law, stated in this opinion, is especially applicable. There are many lonely ranches miles away from any help or any safe place of retreat, and they are not infrequently occupied by persons without other protection or defense than that which they can make for themselves. That any man or woman so situated must first look about for means of escape before they can defend themselves against impending danger is not the law. It would not benefit community or tend to make life safer. We think it is better that it should be clearly stated and understood that one who starts out upon an expedition which involves a felonious assault upon another in his own house, takes his life in his hand, and the right to take it from him depends only upon the apparent necessity which he himself may create. The person so assaulted has the right to defend himself and to pursue his adversary until he has freed himself from all danger. Whether the defendant kept himself within these principles, is the issue which should be presented to the jury for their decision.

The judgment will be reversed, and the cause remanded for a new trial.                    *Reversed.*

POTTER, C. J., and KNIGHT, J., concur.