THOMAS v. STATE.

Opinion delivered March 11, 1905.

1. HOMICIDE—SELF-DEFENSE.—A killing in self-defense is justifiable only when it is necessary. (Page 435.)

2. SAME—PREJUDICE.—Failure to instruct that deliberation is a necessary ingredient of murder in the first degree is not prejudicial where the jury found defendant guilty only of murder in the second degree. (Page 436.)

3. SAME—AMBIGUITY—GENERAL OBJECTION.—A general objection to an instruction as a whole is insufficient to raise a specific objection to a particular ambiguous clause to the effect that the jury was not at liberty to "doubt as jurors if they believed as men." (Page 436.)

4. INSTRUCTION—PREJUDICE.—An instruction which might be misleading by reason of its incompleteness when standing alone may be cured by other instructions which supply the omission. Thus, where the court, in a murder case, had charged the jury that guilt of defendant must be proved beyond a reasonable doubt, it was not error to give a further instruction that if the State proved that defendant was guilty of the killing the burden of proving circumstances in justification or mitigation of the killing devolved upon the defendant. (Page 437.)

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

Affirmed.

W. B. Sorrells and S. J. Hunt, for appellant.

The court erroneously charged the jury as to the burden of proof to justify or excuse the homicide. 62 Ark. 307; 64 Ark. 147; 71 Ark. 462.

Robert L. Rogers, Attorney General, for appellee.

Battle, J. Claude Thomas was accused of murder in the first degree committed by willfully, unlawfully, feloniously, with malice aforethought and with premeditation and deliberation killing and murdering George Thomas. He was convicted of murder in the second degree, and condemned to be punished by imprisonment in the penitentiary for a term of eighteen years. He appealed to this court.

There were only three persons present at the time and place of the killing, the deceased, defendant, and Rosy Thomas. Rosy Thomas testified: "The deceased was my father. On the evening of the killing the defendant took supper with me, and when my father came home defendant and I were standing up by the fireplace. When he came in he said: 'Claude Thomas, I have done spent $9 to get Rosy a divorce, and you promised when she got a divorce to marry her, and you have not done it, and you ain't here doing nothing but trying to fool her.' The defendant replied: 'I know you have got the best—you have got your gun.' My father then said: 'I am not after shooting you, Claude.' The defendant repeated his remarks, and kept moving towards him until he clinched him and drew his pistol out of his bosom. I then ran out, and got under the house. I heard two shots. I remained under the house until the defendant came out and ran away. I saw him coming back toward the house, and I ran over to my cousin's. This occurred in March, in Jefferson County, Arkansas."

At the time of this clinching, the deceased was between the defendant and the door, there being only one door to the room. The witness thought the defendant was going out.

Defendant testified: "I went up to the house of the deceased on the night of the difficulty, and ate supper with his daughter. When he came home, he asked me what I was doing there, and told me to get off the place. I asked what the trouble was, and he said: 'I mean for you to get out.' I told him I would go out if he would put down his gun, which he refused to do. He said: 'I have got you the way I aimed to find you—when you have got your pistol in your pocket. I am tired of your fooling with Rose; you have been fooling with her long enough.' He threw his gun up, and I grabbed it with my left hand, and held it off

of me while I pulled my pistol with my right. As I pulled it out, it went off accidentally, missing the deceased, but shortly afterwards, in order to save my own life, I fired the second shot which struck him in the head. I have had no trouble with him before, and was surprised with his conduct. I am 37 years old, and weigh 134 pounds."

On cross-examination the attorney for the State asked him: "Now, Thomas, I will ask you again, if you were close enough to old man George to take hold of the gun with your left hand, what was there to prevent you from taking hold of it with both of your hands and preventing him from hurting you if you could?" The defendant objected to the question. The court asked: "On what grounds?" Attorney: "On the grounds that he made a murderous assault upon him." The court: "That makes no difference; if he could have prevented him from shooting him by taking hold of the gun with both hands, he was bound to do it.". Attorney: "We except to the language of the court." The court: "You can except, but that is the law; and I shall certainly so instruct the jury that he was bound to use all reasonable care in his power to prevent the other man from killing him. and he had no right to kill him except as a last resort."

The court instructed the jury impaneled in the case, in part, as follows:

"No. 13. If you find from the evidence, beyond a reasonable doubt, that the defendant was at George Thomas' daughter's house when Thomas came there, that a controversy arose between them about defendant's attentions to his daughter, and that the said George Thomas at the time had a gun in his hand, and that he warned the defendant to go away from his premises and keep away from his daughter, but made no attempt to assault or injure him with the gun, and told him that he had no intention of hurting him or shooting him, and that the defendant gradually approached the said George Thomas until he was near enough to seize the gun, or to take hold of him, and that he then shot and killed him, then the defendant is guilty of either murder in the first or second degree, according to whether you find that the killing was done with or without premeditation."

"No. 14. If you believe from the evidence, beyond a reason

able doubt, that George Thomas made an assault upon the defend-
ant with the gun, and that defendant got hold of the same before
Thomas had an opportunity to discharge it, and that by reason of
the difference in their ages and physicial strength, under all the
circumstances then and there existing as the same appear from
the evidence, the defendant had reasonable grounds for believ-
ing that he might take away the gun from the hand of the said
George Thomas, and thereby prevent him, the said George
Thomas, from using it to do him, the defendant, great bodily
injury or take his life, then it was the duty of the defendant
to have done all that was reasonably in his power to prevent the
said George Thomas from shooting him and avert the necessity
of taking the life of said George Thomas; and if he failed to do
this, he is guilty of murder in the second degree, if he acted
with malice; or voluntary manslaughter, if he acted without
malice."

"No. 11.   The burden is upon the State to prove every alle-
gation in the indictment to the satisfaction of the minds of the
jury, and beyond a reasonable doubt; but when the killing has
been proved, then the burden of proving circumstances in
justification or mitigation of the offense devolves upon the defend-
ant, unless such circumstances appear from the testimony on the
part of the State."

"No. 13.   A reasonable doubt is not a mere conjectural
dr possible doubt; it is the state of facts which, after a full
comparison of all the evidence both for the State and for the
defense, leaves the mind of the jury in that condition that they
cannot say that they feel an·abiding faith amounting to a moral
certainty that the defendant is guilty of the charge laid in the
indictment.   It is such a doubt, arising from a fair consideration
of all the evidence as would cause a prudent and reasonable
man to hesitate and pause before taking decisive action in a
matter of the highest importance affecting his own private con-
cerns.   If you have such a doubt, if your convictions of the
defendant's guilt as laid in the indictment does not amount to
a moral certainty, from the evidence in the case, then you must
acquit the defendant.   *But you are not at liberty to doubt as jur-
ors if you believe as men;* and if, after a full and fair considera-
tion of all the evidence you have an abiding conviction of the

truth of the charge, then you have no reasonable doubt, and you should find the defendant guilty."

The court committed no error in allowing the State to ask the question propounded by it, and objected to by appellant, and in the remarks made by the judge in respect to the same. In *Carpenter* v. *State,* 62 Ark. 286, 309, this court said: "Any one, under the laws of this State, may repel force by force in defense of person, habitation, or property against one who manifestly intends and endeavors by violence or surprise to commit a known felony upon either, and that he need not retreat, in such cases, but may stand his ground, and, if need be, kill his adversary. It is also true that any person, for the prevention of murder, rape, robbery, burglary or any other aggravated felony, may, under our statutes, if necessary, kill another attempting to·perpetrate such felonies. But these rights are not without limitations. 'A bare fear,' says the statute of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It ·must appear that the circumstances were sufficient to excite the fears ·of a reasonable person, and that the party killing really acted· under their influence, and not in a spirit of revenge.' (Sec. 1675.) The circumstances must be such as to impress the mind of the slayer, without fault or carelessness on his part, with the reasonable belief that the necessity for killing to prevent the felony was immediate and impending, and the danger imminent. Knowing the other's design, the slayer has no right to seek a conflict; but must wait until the other does something at the time indicating a present intention of carrying his design into effect. While the slayer can stand his ground and refuse to retreat, he should do what he can to avoid the necessity of killing, and at the same time exercise this right and prevent the threatened felony. In no case will he be justified in taking the life of the aggressor, when, by arresting or disabling him, or otherwise, he can prevent the felony, or when the danger, in the reasonable belief of the assailed, has ceased to be immediate and pending. There must be an immediate necessity for the killing, for the statute says: 'Every person who shall unnecessarily kill another while resisting an attempt by such other person to commit any felony, or to do any other

unlawful act, or after such attempt has failed, shall be adjudged guilty of murder or manslaughter, according to circumstances.' " Section 1649, Sandels & Hill's Digest.

While instruction No. 13, first copied in this opinion, may be defective because it does not make deliberation necessary to constitute murder in the first degree, yet it was not prejudicial in that respect, the jury having found the appellant guilty of murder in the second degree.

To instruction No. 13, and instruction No. 14, the second cop ied in this opinion, appellant says his objection is "that in them the court instructs the jury upon the weight of the testimony. The court takes the testimony of Rosy Thomas, and, quoting the same almost *verbatim,* says to the jury: 'If this is true, the defendant is guilty of murder in the first degree,' " etc. This is not correct. In both instructions the court told the jury that if they found or believed from the evidence beyond a reasonable doubt certain things specified, then the defendant is guilty of the offenses named herein. The court did not intimate that one witness is more credible than another, or that they ought to believe any particular testimony.

In instruction No. 11 (the third in the order copied in this opinion) the court virtually told the jury that if the State proved that the defendant was guilty of an offense included in the indictment, the burden of proving circumstances in justification or mitigation of such offense devolved upon the defendant. This is true, but it was the duty of the jury to acquit him of the offense if they entertained a reasonable doubt of his guilt. They were instructed to do so in that event in other instructions. Construed in connection with the other instructions in the case, and applied to the evidence, it could not have been prejudicial.

The objections of appellant to the last instruction copied in this opinion are these words: "But you are not at liberty to doubt as jurors if you believe as men." They were objectionable, and should not have been used; but appellant objected to the instruction in which they appear generally, when the defect in it by reason of these words should have been reached only by a specific objection. *Phoenix Insurance Co.* v. *Flemming,* 65 Ark. 54; *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 255; *St.*

*Louis, I. M. & S. Ry. Co.* v. *Pritchett,* 66 Ark. 46, and *Darden* v.
*State,* 73 Ark. 315. These words, unexplained, can be con-
strued to mean that the jurors should come to conclusions as
to the guilt or innocence of the defendant as they would if they
had not been jurors; that they might convict if as men they believe
that he was guilty beyond reasonable doubt, although as jurors
they might find, upon careful consideration, that the evidence
adduced at the trial was not sufficient to prove every element of
guilt and exclude all such doubts. But, construed in connection
with the remainder of the instruction in which they appear and
other instructions, they are not susceptible of such construction,
and were not prejudicial.

Construed together, as they should have been, we find no
prejudicial error in the instruction of the court.

The evidence was sufficient to sustain the verdict.

Judgment affirmed.