PEOPLE v. FUCARINO.

(Supreme Court, Appellate Division, First Department. May 5, 1905.)

1. MURDER—INSTRUCTIONS—SELF-DEFENSE.

On a prosecution for murder, defendant requested an instruction that, if defendant was pursued or assaulted by deceased, so as to induce in accused a well-grounded belief that he was actually in danger of losing his life or suffering great bodily harm, when acting under the influence of such apprehension, he was justified in defending himself, whether the danger was real or only apparent. *Held* that, as an abstract proposition, the instruction was not correct, in that it omitted the element of necessity.

[Ed. Note.—For cases in point, see vol. 26, Cent. Dig. Homicide, §§ 164–167.]

2. SAME—INSTRUCTIONS.

The court instructed that homicide is justifiable when necessarily committed for the preservation of life or for protection from great bodily injury, and that an accused is justified in using force only when force is necessary for such purpose, and that the danger must be either actual or apprehended on reasonable grounds—the question whether the necessity existed being one for the jury—and also instructed that one without fault, if attacked by another, may kill, if he has reasonable grounds to believe there is a design upon his life, or a design to do him great bodily harm, although in fact he is mistaken. *Held* that, in view of such instructions, there was no error in refusing the instruction asked.

3. SAME—INSTRUCTIONS.

On a prosecution for murder, defendant requested an instruction that where a person is pursued or assaulted by another, so as to induce in him a reasonable belief that he is actually in danger of his life or of suffering great bodily harm, he need not wait until his adversary gets advantage over him, in defending himself from the threatened attack. *Held*, that the request was properly refused, in that the instruction omitted the element of necessity.

[Ed. Note.—For cases in point, see vol. 26, Cent. Dig. Homicide, §§ 164–167.]

**4. SAME—INSTRUCTIONS.**

On a prosecution for murder, an instruction that, if one is attacked with a dangerous weapon, it is incumbent on him to avoid the assault by retreat, if retreat is open to him, but, if the same prove unavailing, the law will hold him harmless if in defending himself he kills the other, was correct.

[Ed. Note.—For cases in point, see vol. 26, Cent. Dig. Homicide, §§ 168–171.]

**5. SAME—EVIDENCE TO SUSTAIN CONVICTION.**

Evidence *held* to sustain conviction of murder in the second degree.

Appeal from Court of General Sessions, New York County.

Gaetano Fucarino was convicted of murder in the second degree, and he appeals from the judgment, and from an order denying a motion for a new trial and in arrest of judgment. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Asa Bird Gardiner, for appellant.

Robert C. Taylor, for the People.

LAUGHLIN, J. The first point made by the appellant is that the verdict is against the weight of the evidence. The undisputed evidence shows that about 6 o'clock in the evening of the 23d day of August, 1902, the defendant fired three shots from a 32-caliber revolver, two of which lodged in the body of Daniel Murphy—one in the right forearm and the other in the left groin—from each of which blood poisoning ensued, resulting in his death. The defendant claims that the shots were fired in self-defense. Evidence was offered in his behalf tending to show that Murphy, who was a foreman of truck drivers and a truck driver in the employ of one Fitzgerald, a contractor, whose barn was at Nos. 537 and 539 West Thirty-Fifth street, in the city of New York, came upon the street from the premises occupied by Fitzgerald and attacked the defendant, without cause or provocation, with a club about three feet in length and three inches in diameter, described as a bale stick, hitting him over the head and felling him to his knees (some of the evidence indicates that the defendant was felled twice on Thirty-Fifth street); that the defendant, somewhat dazed, while endeavoring to regain his feet, and while Murphy was in a threatening attitude, in the act of inflicting another blow, fired the revolver in the air, and then ran west to Eleventh avenue, and down that avenue to the corner of Thirty-Fourth street, closely pursued by Murphy with the club, the latter gradually gaining on the defendant, and overtaking him just as he had turned into Thirty-Fourth street, toward Tenth avenue, and there inflicting one or two more blows upon the defendant, again felling him to the pavement upon his knees; and that the defendant, while in this position, with Murphy standing over him in a threatening attitude, and in the act of striking again, fired two more shots, whereupon Murphy sank or fell to the pavement, and ceased his attack and pursuit. It is undisputed that Murphy came upon the street from his employer's premises with such a club in his hand.

The people, however, gave evidence tending to show that at the time of his doing so some four Italians, including the defendant, were assembled in the street in front of the entrance to Fitzgerald's premises, having an animated discussion in the Italian language; that the defendant was not an employé of Fitzgerald's, but one or more of the others was, and one of them, who had money coming to him on the next pay day, had demanded his pay of Murphy shortly before, although this was not pay day, and that another of them, after Murphy's refusal to make the payment demanded, had appeared at the entrance to Fitzgerald's premises, flourishing a knife and "jabbering in Italian"; that shortly after Murphy went upon the street he was observed to be in an altercation with four Italians in the middle of the street, Murphy having hold of one end of the stick, pushing off the Italian with the knife, who had hold of the other, with the knife in his hand, and the other three, including the defendant, behind Murphy, beating him with their fists; that thereupon another employé of Fitzgerald's came to Murphy's rescue, and struck the Italian who had hold of the club a blow which released his grasp upon the club and knocked him down; that at about this time a pistol shot was fired, and immediately thereafter the defendant was seen standing at the curb on the opposite side of the street, facing Murphy, with the revolver smoking in his hand; that as soon as the shot was fired, his companion who had come to his rescue started towards Fitzgerald's premises, and that Murphy turned, and apparently saw the defendant and started after him; that as Murphy turned, and before starting after the defendant, blood was observed trickling from his right forearm; that when Murphy started after him the defendant started and ran down the street on the course already described; that Murphy did not at this time or thereafter have the club or any weapon in either hand; that when the defendant reached the corner of Thirty-Fourth street, and was turning to the left into that street, Murphy was gaining on him, but was still 10 or 15 feet behind, and not within reaching or striking distance; and that the defendant then turned and pointed the revolver at Murphy, and fired two shots in rapid succession, one of which took effect in the groin, as stated, and the other missed its aim.

It thus appears that there is a sharp conflict between the testimony of the witnesses called on behalf of the prosecution and those called by the defendant, and that, according to the evidence presented by the people, if the jury believed it, as their verdict indicates, the first shot took effect in Murphy's forearm, and when the defendant fired it his life was not in danger, nor was he in a position to apprehend that great bodily harm would be inflicted upon him. The same is true of his position, according to the testimony of the witnesses for the people, when he fired the other shots. At the time of firing the last shot he may have been in some danger of receiving punishment at the hands of Murphy, who was unarmed; but he had brought it upon himself by his own felonious act in wounding Murphy by the first revolver shot, and that was not sufficient justification for taking Murphy's life. Many

witnesses were called upon either side. It would unduly and unnecessarily lengthen the opinion to analyze their testimony. Suffice it to say that the evidence not only presented a fair question of fact for the consideration of the jury, but the testimony of many of the witnesses for the defense was in some respects quite improbable. A careful examination of the evidence convinces us that the verdict of the jury is fairly sustained and warranted.

At the close of the charge, counsel for the defendant requested the court to instruct the jury that:

"If the jury find that the defendant was pursued or assaulted by the deceased in such a way as to induce in him a reasonable and well-grounded belief that he was actually in danger of losing his life or suffering great bodily harm, when acting under the influence of such apprehension, he was justified in defending himself, whether the danger was real or only apparent."

And an exception was taken to the refusal of the court to so charge. The learned trial justice had quite clearly and impartially instructed the jury upon the law, and upon this point had already said (quoting from a decision) that homicide is justifiable when necessarily committed for the preservation of one's life or his protection from great bodily injury; that an accused is justified in using force only when force is necessary for those purposes; that the danger must be either actual or apprehended upon reasonable grounds, and that whether the necessity for taking the decedent's life existed for the protection of the defendant's life, or to prevent great bodily harm to him, was a question for the jury; and that it was the duty of the defendant to avoid the danger without taking life, if that could be done. After refusing to charge as requested, the court, at the request of counsel for the defendant, instructed the jury:

"That one without fault, if attacked by another, may kill his assailant, if the circumstances be such as to furnish reasonable ground of a design to take his life or do him great bodily harm, although in point of fact he is mistaken."

It thus appears that the jury had already been instructed substantially as requested, and, if not, they were subsequently correctly instructed on every material and proper element of the request which was refused. The request, as an abstract proposition of law, was not correct. It wholly omits the element of necessity, upon which the judge had properly charged the jury.

Counsel for the defendant also requested the court to charge that:

"Where a person is pursued or assaulted by another in such a way as to induce in him a reasonable or well-grounded belief that he was actually in danger of losing his life or suffering great bodily harm, he need not wait until his adversary gets advantage over him, in defending himself from the threatened attack."

This request was also refused, and an exception taken by the defendant. The court thereafter instructed the jury, at the request of counsel for the defendant:

"That if one is attacked with a dangerous weapon, it is incumbent upon him to avoid the assault by retreat, if retreat is open to him; but, if this prove unavailing, the law will hold him harmless, if, in defending himself, he kills his assailant."

The instruction given was a correct proposition of law, and it embraced the element of necessity. This was omitted from the request refused, and justified the ruling of the court thereon. The jury could not have failed to understand from the clear instructions of the court that if necessary for the preservation of the defendant's life, or to prevent the infliction upon him of great bodily injury, or if a reasonable man, situated as he was, would be justified in inferring such necessity, then he was at liberty to protect his life and prevent the infliction of great bodily harm, without waiting until the assailant obtained such advantage over him as would render this impossible. The court, however, properly refused to charge as requested, for the reason that the request did not embrace this essential element of necessity to take the life of the decedent for the defense of those rights of the defendant in the protection of which the law justifies a homicide.

These are the only points presented by the appellant, and our views thereon lead to an affirmance.

It follows that the judgment and order should be affirmed. All concur.

