## DURHAM v. STATE
(No. 1081; Decided Dec. 15, 1922; 210 Pac. 934)

CRIMINAL LAW—CONTINUANCE—HOMICIDE — EVIDENCE—UNCOMMUNICATED THREATS—INSTRUCTION ON THREATS—LAW OF SELF-DEFENSE—NEWLY DISCOVERED EVIDENCE—SHOWING OF DILIGENCE AS BASIS FOR NEW TRIAL.

1. Denial of application for continuance on the ground that depositions taken on defendant's behalf had not arrived, if error, was cured by the subsequent arrival and use of the depositions during the trial.

2. In a homicide case, where the proof justifies the giving of a charge on the law of self-defense, the defendant may,

for the purpose of showing deceased to have been the aggressor and the killing to have been necessary in self-defense, introduce evidence to show that deceased entertained hostile feelings toward him.

3. In a homicide case, involving self-defense issue, evidence as to previous difficulties between the defendant and the deceased is admissible where it is apparent that such difficulties could legitimately have affected defendant's apprehension.

4. In homicide prosecution involving self-defense issue, testimony as to uncommunicated threats by the deceased toward the defendant is admissible, if such threats legitimately tend to show the mental attitude of the deceased toward the defendant at the time of the homicide, and the remoteness of such threats does not affect the competency thereof, but goes only to the weight of the evidence.

5. In a homicide prosecution, defended on the ground of self-defense, exclusion of evidence as to threats made by deceased toward defendant, if error, *held* harmless in view of remoteness of such testimony.

6. In a homicide prosecution, where there is evidence tending to show that deceased made threats against the defendant which were communicated to him, or made recent uncommunicated threats, and that deceased brought about the difficulty and was in fault at the time of the killing, the court must instruct the jury as to the law governing threats.

7. In order that threats by deceased against the defendant may serve as justification under a plea of self-defense, there must be such a demonstration of an immediate intention to execute them as, taken in connection with such threats, would naturally induce a reasonable belief that the person threatened would lose his life or suffer great bodily harm if he did not immediately take the life of the person making them.

8. In a homicide prosecution, defended on the ground of self-defense, requested instruction on the law of threats by deceased against the defendant, not requiring an overt act to carry threat into effect, nor requiring jury to determine whether the defendant had reasonable cause to believe and did believe that the deceased was about to carry out his threats from the facts and circumstances shown in the evidence, instead of from the evidence of the threats alone, *held* properly refused.

9. To justify a homicide on the ground of self-defense, it must appear that the defendant was in great peril of death or serious bodily harm, or had reasonable ground for believing and did believe that he was in such peril, and that the killing was necessary to avert such peril, and that no other reasonable means of avoiding it was open to him.

10. A new trial will not be granted because of newly discovered evidence where defendant does not show that he exercised due and reasonable diligence in attempting to procure the evidence in time for use at the trial, even though the defendant is confined in jail, at least until it appears that there was no outside assistance available.

11. Where a large number of persons were present at the scene of the homicide, some of whom were known to the defendant or her counsel, denial of application for a new trial because of newly discovered evidence to be given by an eyewitness *held* not error in the absence of a showing that the defendant exercised diligence to procure the presence of such witnesses at the time of the trial.

Error to District Court, Natrona County; Cyrus O. Brown, Judge.

Ida Durham was convicted of murder in the second degree, and she brings error.

*Hench* and *Bullack,* for plaintiff in error.

The court erred in denying plaintiff in error time for the taking of depositions and preparation for her defense. (Ennis v. State, 167 Pac. 229; Sec. 7518 C. S.) A defendant is entitled to reasonable time for preparation for trial. (Powers v. People, 53 Colo. 43, 123 Pac. 642; Harris v. State, 132 Pac. 1121; Schaffer v. Territory, 127 Pac. 746; State v. Musselman, 172 Pac. 346; Moore v. State, 139 Pac. 709.) Technical objections should not prevent the granting of a continuance and time to prepare for trial. (Owen v. State, 163 Pac. 548; Payne v. State, 136 Pac. 201; Smith v. State, 139 Pac. 709; Johnson v. Dinsmore, 9 N. W. 559.) Facts set forth in affidavits for continuance must be taken as true. (Hair v. State, 16 Neb. 829; Newman v. State, 35 Pac. 194; Cutler v. State, 42 Ind. 244; Eslinger v. East, 100 Ind. 434.) The court erred in refusing requested in-

struction "A" on the question of threats. (Gardner v. State, 196 Pac. 750; State v. Cushing, 45 Pac. 145; People v. Harris, 54 N. W. 650.) Defendant was entitled to requested instruction as to the relative size and strength of parties. (21 Cyc. 969; State v. Barber, 88 Pac. 418.) The court erred in refusing evidence of threats made by deceased against defendant, and ruling out defendant's offer to prove destructive acts against defendant's property by deceased. In homicide where the defense is self-defense, it is entitled to instructions on every phase of the issue. (State v. Zellers, 7 N. J. L. 230; 21 Cyc. 962; Russell v. State, 11 Tex. App. 288; Smith v. State, 174 Pac. 1108; Adams v. State, 84 S. W. 231; Michie on Homicide, Vol. 1, p. 344; 21 Cyc. 969; State v. Gray, 74 Pac. 927.) In order to justify homicide in self-defense, it is not necessary that deceased shall have made an attack on defendant (21 Cyc. 814), or that the slayer shall have been in actual danger of death or great bodily harm (21 Cyc. 860.) Defendant, being a woman, had a right to use a weapon, if she apprehended danger (21 Cyc. 824.) This case comes clearly within the facts and principles to be found in the case of Mortimore v. State, 24 Wyo. 452, where subject to threats, acts and conduct of the deceased, defendant became apprehensive of danger.

*Vincent Carter,* Deputy Attorney General, for defendant in error.

Defendant's motion for continuance was denied for insufficient showing as to materiality thereof. The granting of a continuance is discretionary. (James v. State, 27 Wyo. 378; McKinney v. State, 3 Wyo. 729; Wassels v. State, 26 Ind. 30; Insurance Co. v. Gisborne, 5 Utah 333.) The error, if any, was cured by the arrival in time of the depositions in question and their use at the trial. (Rogers v. Rogers, 41 Ky. 324; McKinn v. McGee, 109 Ind. 209; Murray v. State, 21 Tex. App. 466; Adams v. Adams, 23 Ind. 50.) Defendant's requested instruction as to threats did not correctly state the law. (Flanders v. State, 24 Wyo. 103;

Mortimore v. State, 24 Wyo. 452.) The instructions given by the court fully covered the points in question. (Horn v. State, 12 Wyo. 80; Cook v. Territory, 3 Wyo. 110.) Defendants in criminal cases are permitted to take depositions, (7518 C. S.), upon an issue of fact joined in the case. (Bias v. Vickers, 27 W. Va.. 456.) Defendant's application to take depositions was prematurely made and depositions taken before an issue of fact is joined are inadmissible. (Comm.. v. Rickertson, 5 Metc. 412-428; People v. Restell, 3 Hills, 289.) Since all of the depositions could have been properly excluded the defendant was benefited to the extent that any portion thereof was received.

The cases of Smith v. State, 174 Pac. 1107 and Beasley v. State, 179 Pac. 647, cited by plaintiff in error, appear to be directly opposed to the contention of plaintiff in error with respect to communicated threats. The alleged threats in the present case bore relation to a distinct and independent transaction which occurred a month or more, previous to the homicide, and were not applicable. (People v. Taing, 53 Calif. 602; Allen v. State, 17 Tex. App. 637; Jones on Evidence, Vol. 1, pp. 742-743.) Before communicated threats can be relevant the evidence must show an overt act with intent to carry the threat into execution. (Steele v. State, 33 Fla. 348-354; State v. Janvier, 37 La. Ann. 645; State v. Harris, 40 Am. St. Rep. 259.) Motions for new trial on the ground of newly discovered evidence should be received with caution and should show reasonable probability that such evidence will materially affect the rights of defendant. Such matters are within the discretionary powers of the trial court. (People v. Rushing, 130 Calif. 449; People v. Williams, 242 Ill. 197; State v. Vallery, 47 La. Ann. 182.) The theory of self-defense is not supported by testimony. Defendant left the State of Oklahoma and followed deceased into the State of Wyoming, apparently for the purpose of killing him; she had a fair trial and the evidence clearly established murder in the second degree.

Blume, Justice.

The defendant was charged with the unlawful killing of Jack Delury and convicted of murder in the second degree. On this verdict sentence was pronounced. She now brings error proceedings to review the judgment of the court below.

The defendant, a woman about 42 years of age, and a barber by trade, became acquainted with the deceased, a man about 45 years of age, at Burkburnett, Texas. She became engaged to him to be married during the summer of 1920. Many difficulties arose between them, the deceased often getting drunk, often asking the defendant for money, and often, as shown by the testimony, quarrelling with the defendant, threatening her with violence, abusing and maltreating her. As a result, so the defendant claims, she was in fear that deceased would kill her or inflict great bodily harm upon her. On May 15th, 1921, defendant, so she claims, was mistreated by deceased on the streets at Oil City, Texas, possibly as a result of the refusal of defendant to give him money. Subsequently during that day deceased cut up, mutilated and destroyed clothing and other personal property of the defendant, the testimony in regard to which was not admitted in evidence. Immediately thereupon the deceased left Texas and came to Casper, in this state where the homicide in question occurred. The defendant, it seems, immediately after the destruction of said personal property, endeavored to find the abode of the deceased and desired him to be arrested or make restitution in value of the property destroyed. Finally discovering his whereabouts, and unable to get the authorities in Texas to bring back the deceased, she, armed with a gun, followed him to Casper, arriving in that city in the evening of June 15th, 1921. The following evening she encountered the deceased at a street-carnival held near the "sand-bar" in said city, and shot him with a gun, as a result of which the deceased soon died. The defendant pleaded self-defense. Other facts in the case will be related further on in the opinion.

1.   Error is assigned because no continuance was, on application, allowed.   The motion for such continuance was based on the ground that depositions which were being taken on behalf of the defendant had not arrived.   These depositions, however, shortly after the making of the motion and toward the beginning of the trial, duly arrived and were offered in evidence and used for and on behalf of the defendant.   If, therefore, there was error because the continuance was not granted, it was clearly cured by the arrival and use of the depositions.

2.   Error is also assigned that the witness Henry T. McHenry was not allowed to testify to certain threats against the person of defendant and communicated to her.   The record is not at all clear that the court struck out such testimony.   Even counsel for defendant, on page 18 of his brief, admits that no objections were made to evidence of threats against the person of the defendant.   We think that the record, on the whole, shows that the evidence thereof was not taken from the jury.

3.   The defendant, as before indicated, offered testimony to show that immediately before leaving Texas and going to Casper, deceased cut, slashed and destroyed the personal belongings, barber outfit and other personal property of defendant and that he had made previous threats to do so. The testimony was excluded and error is assigned by reason thereof.   We should, in the first place, perhaps say that we do not regard the testimony of the same importance as do counsel for defendant.   Considerable testimony of previous threats against, and previous violence toward, the person of deceased was shown.   The evidence of the destruction of property and threats in relation thereto would, therefore, at most be cumulative on the points for which testimony of threats is admitted.   Again, destruction of defendant's property, or threats in relation thereto, would not necessarily show that the deceased also had an intention, or was inclined, to do violence to the person of defendant.   The evidence would, perhaps, have a tendency to show the worth-

lessness of the deceased, but that fact alone would not justify or palliate the homicide.

Where the proof justifies the giving of a charge on the law of self-defense, defendant may, for the purpose of showing deceased to have been the aggressor and the killing to have been necessary in self-defense, introduce evidence to show that deceased entertained hostile feeling towards him. (21 Cyc. 962.) Uncommunicated threats are evidence of the mental attitude of the deceased toward the accused; that is true also of communicated threats, and, further, evidence of the latter sheds light upon the mental attitude of the accused toward the deceased when the homicide occurred. (See State v. Evans, 33 W. Va. 426, 10 S. E. 792; Wigmore on Ev., § 111.) In the case of Amos v. State, 14 Ga. App. 589, 81 S. E. 903, it was held that testimony of the breaking up of personal property should not be excluded, and the same rule should, no doubt, be applied to threats to destroy such property, where such evidence tends to show the state of feeling of the parties, or either of them. Such evidence may in certain cases be quite remote. The Supreme Court of Arkansas, dealing with this subject in Parsley v. State (Ark.) 235 S. W. 797, said:

"'Of course where the threats are too remote, both in circumstance and time, to afford any reasonable presumption or inference of connection between the occasion when the threats were made and the difficulty under investigation, they are not admissible. (Turner v. State, 128 Ark. 565, 195 S. W. 5; Fowler v. State, 130 Ark. 365, 197 S. W. 568."

Wharton on Crim. Ev., § 918, lays down this rule:

"Where the difficulty is followed by a cessation of hostilities, the circumstances of the previous difficulties are of little value."

Wigmore on Ev., § 248, says that the true solution is to exercise discretion, and to admit in evidence facts of previous difficulties when common sense tells us that they could legitimately affect a defendant's apprehension. We think this statement correct and to be equally applicable to threats made by the deceased against the accused and communi-

cated to the latter. If such previous threats, or other facts
of the same psychological value, are not known to the ac-
cused, but common sense tells us that they would legitimate-
ly tend to show the mental attitude of the deceased toward
the accused at the time of the homicide, then they should
be admitted in evidence. In cases of doubt, such testimony
should be admitted, for, generally speaking, remoteness of
threats or difficulties between the parties from the date of
the homicide does not affect the competency thereof as evi-
dence, and goes only to the weight thereof. (State v. Wil-
son, 250 Mo. 323, 157 S. W. 313.) But we need not deter-
mine as to whether the facts in question, relative to the de-
struction of personal property and threats in relation there-
to, should have been admitted in evidence or not. The ques-
tion before us is whether there was error, if error there was,
that is so prejudicial as to require a reversal of the case.
Let us examine a few of the facts with that in view.

The deceased, immediately upon destroying the property,
left Texas and went to Casper. There are no circumstances
or facts shown in the record which would tend to show that
he ever again expected to see the deceased. He had voluntar-
ily separated himself from her by hundreds of miles. A month
intervened between the destruction of the property and the
homicide. The defendant, knowing that deceased had left,
attempted to discover his whereabouts and when she succeed-
ed, endeavored to get the local authorities in Texas to cause
the deceased to be brought back to that state. The latter
refused to do so. The defendant thereupon, armed with a
revolver, herself left Texas, sought out the deceased in Cas-
per, found him and tried to get him arrested, but failed.
In the evening of that day—according to her testimony—
she encountered the deceased at a street carnival, and when
he made a move with his left hand as if to strike her, seem-
ingly with a knife, she, apparently calm, cool and collected,
instantly shot him, without making an outcry, although a
multitude of people were present who might have rendered
her instant aid. Under these facts, we think the testimony

in question too remote to justify us in reversing the case on account of its exclusion.

4.   The only instruction given which presented the theory of self-defense was the following:

"The court instructs the jury that the right to defend one's self against danger, not of his or her own seeking, is a right which the law not only concedes but guarantees to all men and women.   The defendant may, therefore, have killed deceased and still be innocent of any offense against the law.   If, at the time she shot deceased, she had reasonable cause to apprehend on the part of deceased, a design to do her serious personal injury, and there was reasonable cause for her to apprehend immediate danger of such design being accomplished, and to avert such apprehended danger, she shot and at the time she did so, she had reasonable cause to believe, and did believe, it necessary for her to shoot in the way she did to protect herself from such apprehended danger, then, and in that case, the killing was not felonious, but was justifiable, and you ought to acquit her upon the ground of necessary self-defense.   It is not necessary to this defense that the danger should have been actually real, or that the danger should have been impending and immediately about to fall.   All that is necessary is that defendant had reasonable cause to believe, and did believe, these facts. But before you acquit on the ground of self defense, you ought to believe that defendant's cause of apprehension was reasonable.   Whether the facts constituting such reasonable cause have been established by the evidence, you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in the case, you cannot acquit in such case on the ground of self-defense, even though you may believe that defendant really thought she was in danger."

The defendant asked the court to give instruction "A," reading as follows:

"The court instructs the jury that if you shall find that the deceased made threats against the life of the defendant, or threats to commit great bodily injury on the defendant,

and that such threats had been communicated to the defendant, before the difficulty in which deceased lost his life, and that defendant had a reasonable cause to believe and did believe at the time she shot the deceased, that said deceased was then about to put such threats into execution, and acting upon such danger, as it reasonably appeared to the defendant at the time, viewed from her stand point, and if you shall find from the evidence that the deceased at the time of the shooting was a man of great physical strength, much superior to that of the defendant, and that he was a man of dangerous disposition, and under such circumstances she shot and killed the deceased, she would be justified, and you should acquit the defendant.''

It will be noted that the instruction given contains no specific reference to threats made by the deceased, although the jury was not at all thereby forbidden to take the testimony concerning these threats into consideration in determining as to whether defendant had reasonable cause to apprehend danger to her. We think, in fact, that particularly in view of the prominence given to that testimony in the trial, the jury could not fail to so take it into consideration in applying the instruction given by the court. Still the point is as to whether the court should have gone further. The law is well settled that where there is evidence tending to show that deceased made threats against the defendant which were communicated to him, and that deceased brought about the difficulty and was in fault at the time of the killing, the court must, when a proper instruction is asked, instruct the jury as to the law governing threats. (State v. Pruett, 24 N. M. 68, 172 Pac. 1044.) That seems to be the law also in proper cases as to recent uncommunicated threats. (State v. Rader, 94 Or. 432, 186 Pac. 79.) Let us then turn to the instruction asked to determine its correctness. The first thing that strikes us is the prominence sought to be attached to the question of threats. Now, no one has a right to kill another simply because he has made threats against him. (Wharton on Homicide (3rd Ed.) § 242.) Nor does the mere belief or fear en-

gendered by such threats on the part of one person that another designs to kill him justify the killing of the latter. (Whart., supra, § 240.) In order that such threats previously made may serve as justification under a plea of self-defense, there must be, at least apparently, such a demonstration of an immediate intention to execute them, as, taken in connection with such threats, would naturally induce a reasonable belief that the person threatened would lose his life or suffer serious bodily harm, if he did not immediately take the life of the person making them. (Whart., supra, § 242; Wigmore on Ev., Sec. 110; Garner v. State, 28 Fla. 113, 9 So. 835; 29 Am. St. Rep. 232.)    Hence an instruction asked which omits the question of an overt act to carry into effect a threatened assault, has been held to have been properly refused.   (Morrisette v. State, 16 Ala. App. 32, 75 So. 177.) The instruction asked in the case at bar is subject to the same objection, particularly in view of the prominence therein given to the subject of threats.   Further, it is entirely silent on the subject as to how the jury is to determine whether the defendant had reasonable cause to believe and did believe that deceased was about to carry out his threats.   That must be determined, of course, from the facts and circumstances shown in evidence.   It may not have been the intention to convey, in the instruction asked, the idea that such belief might, by the jury, be found from the evidence of threats alone, yet that construction might be gathered therefrom, and hence the instruction was misleading and properly refused.   (State v. Calhoun, 23 N. M. 681, 170 Pac. 750.)

The law of self defense is founded upon necessity.   To justify a homicide, it must appear that the slayer was in great peril of death or serious bodily harm, or had reasonable ground for believing and did believe, that he was in such peril and that the killing was necessary to avert such peril, and that no other reasonable means of avoiding it was open to him.   (Wharton, supra, § 225; People v. Fucarino, 104 App. Div. 437, 93 N. Y. S. 689; Barnhill v. State, 56 Fla. 16, 48 So. 51.)   In Thomas v. State, 74 Ark. 431, 86

S. W. 404 it was held that a person menaced by another with a gun is not justified in shooting the other, if he can prevent him from shooting by taking hold of the gun with both hands. In the case of State v. Stockhammer, 34 Wash. 262, 75 Pac. 810, it was held that if taking a life can be prevented by giving warning, that must be given. Threats alone, as stated, do not justify the taking of life. Not only must there be some hostile demonstration, or apparent demonstration of an intent to carry out the threats, but this must be coupled with ability to take life, or inflict grievous bodily harm, before extreme measures become defensive and can be resorted to. (Whart., supra, § 242; Karr v. State, 10 Ala. 4, 14 So. 851; 46 A. S. R. 17; People v. Smith, 164 Calif. 451, 129 Pac. 785.) These cases but illustrate the general principle that the element of necessity must appear before a homicide, on the theory of self-defense, can be held to be justified. We do not think that the instruction asked in the case at bar contains any reference to that element, or at least not in such form that the jury could plainly understand therefrom that it must be present in order to justify the defendant in killing the deceased.

5. Defendant set forth as one of the grounds for a new trial, in her motion made for that purpose, the fact of newly discovered evidence—that of A. J. Martin. The latter, in his affidavit, attached to the motion, set forth that he was present at the affray; that he saw the deceased jostle the defendant, saw him stand in a braced position, one foot in advance of the other; that deceased drew back his arm with his fist closed and stood facing the defendant as if to strike a blow. The defendant herself, in her affidavit attached to the motion, swore that she had no knowledge or information as to the testimony of said A. J. Martin, until several days after her trial had ended and that she had never seen or known him. That is all the showing made on this subject.

It is a principle of law, firmly established, that a new trial will not be granted because of newly discovered evidence, where the party seeking it does not show that he exercised due and reasonable diligence in attempting to pro-

cure the evidence in time for use at the trial. (12 Cyc. 737;
29 Cyc. 886; 20 Standard Ency. of Proc. 567; People v.
Lim Foon, 29 Cal. App. 270; 155 Pac. 477; Talley v. State,
18 Ariz. 309, 159 Pac. 59.)   And this is so, even though
the defendant is confined in jail, at least unless it appears
that there was no outside assistance available. (Gordon v.
State, (Tex. Crim.) 224 S. W. 894.)   The applicant for a
new trial should make reasonable inquiry, where necessary,
before the trial to learn what persons were present at the
time of the occurrence in question (29 Cyc. 892), and if the
facts sought to be shown by the new witness could have
been shown at the trial by other witnesses, then the finding
of such new witness will not furnish a ground for a new
trial. (Crozier v. Cooper, 14 Ill. 139; Hanley v. Life
Ass'n., 69 Mo. 380; Slattery v. Supreme Tent, 19 Pa. Super.
108; Dyk v. De Young, 133 Ill. 82, 24 N. E. 520; 20 Stand-
ard Ency. Proc. 569-570.)

No showing whatever has been made in the case at bar,
that any diligence was used in discovering the evidence in
question, although substantially two months intervened be-
tween the arrest of defendant and the time of her trial. A
large number of persons were present at the scene of the
homicide, some of whom were known to the defendant or
her counsel. The names of others there present could, no
doubt, have been easily discovered by some reasonable in-
quiry. If the facts testified to by the defendant and shown
in the affidavit of A. J. Martin, are true, it is not unlikely
that there were other persons who knew the facts as well as
Martin. Reasonable inquiry before the trial might, in fact,
have disclosed the presence of the latter at the place of the
homicide. In any event, it was defendant's duty to make
reasonable efforts to find out before the trial, who was pres-
ent, and no such efforts having been made, the court prop-
erly refused to grant a new trial on the ground of the newly
discovered evidence in question. That was the holding of
the Court of Criminal Appeals of Texas under circum-
stances very similar to those in the case at bar, as shown in
the case of Holliday v. State, 37 S. W. 751; (see also People

v. Gonzales, 143 Cal. 605, 77 Pac. 448; Austin v. State (Tex. Crim.) 51 S. W. 249.)

*Finding no reversible error in the record, the judgment below is accordingly affirmed.*

Kimball, J., and Burgess, District Judge, concur, the latter sitting in place of Potter, Ch. J., who being ill, did not sit.