THE STATE OF WYOMING,

*Plaintiff and Respondent,*

vs.

GEORGE FRANKLIN,

*Defendant and Appellant.*

(No. 2551; October 28th, 1952; 249 Pac. (2d) 520)

For the defendant and appellant the cause was submitted upon the brief of John S. Spriggs of Lander, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Harry S. Harnsberger, Attorney General and Howard B. Black, Deputy Attorney General, both of Cheyenne, Wyoming, and oral argument by Frank E. Hays of Lander, Wyoming, Assistant County and Prosecuting Attorney of Fremont County, Wyoming.

## OPINION

BLUME, Chief Justice.

In this case the defendant, George Franklin, was convicted by a Justice of the Peace in Fremont County, Wyoming, on August 30, 1950, for assault and battery committed on August 25, 1950, upon the person of one

Ben Iturrian. He was fined in the sum of $25. An Appeal was taken by the defendant to the District Court of Fremont County, Wyoming. The case was tried to a jury. He was again convicted and, on September 27, 1951, the court imposed upon the defendant a fine of $100 and directed the defendant be kept in the custody of the sheriff until the fine should be paid. From that conviction and sentence, the defendant has appealed to this court.

The affray in question herein took place near a corral in Fremont County, Wyoming. The prosecuting witness, Iturrian, a rancher in Fremont County, Wyoming, was driving a pickup truck. He had his four children with him. He had lost some of his horses and was looking for them at a corral located apparently on some Government land. While he was at or near the corral, he saw the defendant and one Jean Ellis and one Walt Herner approaching the corral with a bunch of horses owned by Jean Ellis, some 40 to 75 in number, which had been gathered up on the public range and these parties were intending to put these horses in the corral in question. The prosecuting witness asked Jean Ellis whether or not she had seen any of his horses. The answer was in the negative. She had apparently made some addition to the corral with some wires and Iturrian asked her as to whether or not this wire had been taken from the so-called "Minturn Springs," which apparently was owned by the prosecuting witness. Jean Ellis seemingly construed this question as an insinuation that she had stolen the wire. The defendant, George Franklin, seemingly in a spirit of chivalry, took it upon himself to avenge the lady for what apparently had been taken as an insult to her, went to where the defendant was and stated: "I hear you accused Jean of stealing your wire." According to the testimony of the State, he thereupon grabbed the dark driving glasses worn by the prosecuting witness,

threw them away and hit him. The latter had some field glasses around his shoulder which tied up one of his arms tightly. What took place thereafter is stated by the prosecuting witness as follows:

"Well, I was surprised, I didn't know how to run and I went on fighting the best I could and I only had one arm to fight with because the other one I couldn't even straighten up with the tight strap around my shoulder. Q. Mr. Iturrian, who struck the first blow? A. Franklin did, I think, and he was faster. Q. What happened after you returned the blow? A. Well, I try to but I had only one hand, I was fighting more in self-defense because he was ferocious and fast."

In any event, the matter resulted into a general fight. The prosecuting witness seemingly was getting the better of the defendant, and according to the testimony for the State, Jean Ellis thereupon grabbed a heavy stone and hit the prosecuting witness over the head, knocking him unconscious. He did not revive for some time, and not until after some water had been thrown over him. The testimony of the prosecuting witness was supported by his two children, one 12 and the other 11 years of age. So the conviction herein for assault and battery was sustained by ample testimony.

At the close of the testimony and before the court gave any instructions to the jury, the defendant, through his attorney, Mr. Spriggs, requested the court to instruct the jury that the crime of assault and battery includes the lesser offense of assault, and that under the charge in this case the defendant might be found guilty of simple assault if the evidence so justified. The court stated: "The court refuses on the ground it is covered by the other instructions." The defendant thereupon took an exception. The trial court was in error. We have examined the instructions given by the court and do not find any reference therein indi-

cating in any way that a charge of assault and battery includes the offense of simple assault. It is, of course, true that the offense of assault and battery includes the offense of simple assault, but it is not necessary to give the instruction asked in this case unless the evidence justified the giving thereof. State v. Gonzales, 46 Wyo. 52, 23 P. (2d) 354. Hence we must consider the evidence submitted in this case.

In the first place the evidence on behalf of the State shows, as already heretofore stated, that the defendant snatched the dark eye glasses from the prosecuting witness and threw them on the ground. This evidence was not denied unless indirectly by the testimony hereafter mentioned. It is said in 6 C.J.S. § 9, p. 801, as follows: "It is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree, which constitute the battery; and it is unnecessary that the contact be effected by a blow, as any forcible contact is sufficient; nor is it necessary that plaintiff's body or even his clothing be touched; knocking or snatching anything from plaintiff's hand or touching anything connected with his person is sufficient." If then it is true and uncontradicted that defendant removed the eye glasses above mentioned, a battery was committed, and in that case it was not necessary to give an instruction on a simple assault.

It is insisted, however, by counsel for the defendant that under the evidence given by the defendant himself such an instruction was necessary, in view of the fact that the defendant testified that when he approached the prosecuting witness he took a swing at him but did not hit him. The evidence given by the defendant is substantially as follows: Jean told me that the prosecuting witness accused her of stealing wire from Minturn Springs. I went back and met him.

"Q. Was he in his pickup when you got back there? A. No. Q. What was he doing? A. Coming up toward me. Q. And how close did he get to you? A. Oh, I rode down, got off my horse and went down there and jumped onto him about accusing Jean of stealing his fence. He kept coming. Q. He kept coming toward you? A. Yes. Q. What was the first thing he did? A. Well, he just kept coming right at me, and I took a swing at him. Q. Did you hit him? A. No, I didn't hit him. Q. What did he do? A. He ducked. Q. Then what was the next thing? A. He ducked and clinched me; he ducked and clinched me. Q. What happened then? A. Well, he got a little tough on the ground then, a little fighting, smacking ears and one thing another. Q. What else did he do to you? A. Well, jabbed his fingers in my eyes, and somebody, I don't know whether it was him but somebody hit me in the head with a rock while we was in a clinch. Q. Now tell the jury what this gouging of the eyes consisted of, how? A. Well, just his fingers jabbed in my eyes and I grabbed his finger and chewed on his finger little bit till he give it up, while he was biting at me at the same time. Q. Now at the first time you swung at him and missed him was he coming toward you? A. Yes, he was coming toward me. Q. And in what kind of attitude was he? A. Oh, he was mad. Q. What? A. He was mad. Q. And why did you swing at him? A. Well, I figured he was going to fight me, swing on me. Q. In other words, you did it to defend yourself? A. Yes. Q. Well, why did you do it? A. Well, I figured he was going to fight me. Q. And did you figure that was necessary? A. I sure did."

It is quite apparent that the evidence of the defendant was based on the theory of self-defense and the court gave a lengthy instruction upon that theory. It would seem that such theory of self-defense was inconsistent with the theory that the defendant was guilty merely of a simple assault, and that accordingly an

instruction on that subject was not necessary to be given. Assuming, however, that there may be some possible doubt in connection with what we have said, we have deemed it best to reduce the fine imposed upon the defendant to the sum of $50, the fine assessable for assault under section 9-208, W.C.S. 1945.

After the defendant had been convicted by the jury and before he was sentenced by the court, he moved to dismiss the appeal taken from the judgment in the justice court. The court overruled the motion. § 15-207, W.C.S. 1945, states as follows: "The cause, when thus appealed, shall stand for trial anew in the district court in the same manner that it should have been tried before the justice, and as nearly as practicable as an issue of fact upon an indictment, without regard to technical errors or defects, which have not prejudiced the substantial rights of either party, and the court has full power over the case, the justice of the peace, his docket entries, and his return, to administer the justice of the case according to law, and shall give judgment accordingly." It is accordingly, quite apparent that the court's ruling was correct. The motion to dismiss was made upon the theory that the court might impose a larger penalty than that which had been imposed by the justice of the peace. The court confirmed the fear of counsel for defendant. But it had the right to impose a larger penalty. 22 C.J.S. § 403 (i), p. 622, 16 C.J. § 709 (9), p. 385. Counsel also claims that it was excessive. Section 9-209, W.C.S. 1945, provides that a court may impose a fine for assault and battery of $100 to which may be added imprisonment not exceeding six months in jail. It was accordingly in the court's discretion to impose the fine imposed in this case. State v. Woodward, Wyo., 240 P. (2d) 1157, 1165.

Counsel of plaintiff also objects to some of the instructions which were given in the case. No exceptions

were taken to these instructions except as hereintofore mentioned. We have held that instructions are not reviewable in the absence of exceptions. State v. George, 32 Wyo. 223, 231 P. 683. Counsel also claim that the children of the prosecuting witness should not have been permitted to testify. No such objection was raised at the time of the trial. Furthermore, one of these children was 12 years of age at the time of the trial of this case and the other one was 11 years of age. They were, accordingly, prima facie competent to testify. Burt v. Burt, 48 Wyo. 19, 41 P. (2d) 524. Other errors are assigned but we do not find that they are well taken.

The judgment of the court is accordingly modified only to the extent that the fine imposed should be and is reduced to the sum of $50 and in all other respects the judgment of the trial court is affirmed.

RINER, J., and ILSLEY, J., concur.