Steve R. GARCIA, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 83–21.

Supreme Court of Wyoming.

Aug. 11, 1983.

THOMAS, Justice.

The primary question presented by this appeal is the proper form of an instruction with respect to self-defense when it is given to a jury in a second degree murder trial. The contentions of the appellant particularly emphasize the language of the instruction with respect to the obligation of the defendant to retreat. A second issue is presented with respect to the refusal of the county court judge to receive testimony from witnesses subpoenaed by the defendant for the preliminary examination. We discern no error in the proceedings before the county court judge nor in the instructions with respect to self-defense. We will affirm the judgment of the district court.

The appellant in his brief sets forth the following statement of the issues before this court:

"I. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT APPELLANT HAD A DUTY TO RETREAT IF HE COULD POSSIBLY HAVE DONE SO; AND WHETHER THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY AS REQUESTED BY APPELLANT THAT HE HAD NO DUTY TO RETREAT UNDER THE FACTS AND LAW OF THE CASE.

"II. WHETHER THE COUNTY COURT'S REFUSAL TO HEAR ANY OF THE WITNESSES SUBPOENAED BY THE DEFENDANT FOR HIS PRELIMINARY HEARING RESULTED IN A DENIAL OF DEFENDANT'S RIGHTS TO A MEANINGFUL PRELIMINARY HEARING UNDER RULES 7 AND 20 W.R.Cr.P."

The State of Wyoming makes a counterstatement of the issues in its brief, which suggests three matters to be determined as follows:

"I. WAS THE INSTRUCTION CHARGING A DUTY TO RETREAT IN ERROR IN THIS PARTICULAR CASE?

Sylvia Lee Hackl, State Public Defender; Gerald M. Gallivan, Director, Wyoming Defender Aid Program; David A. Hampton, Student Intern, Wyoming Defender Aid Program, and Michael A. Blonigen, Student Intern, Wyoming Defender Aid Program, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Margaret M. White, Asst. Atty. Gen., for appellee.

Before ROONEY, C.J., and RAPER,* THOMAS, ROSE and BROWN, JJ.

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

"II. DID THE MAGISTRATE COMMIT ONLY HARMLESS ERROR IN DENYING THE DEFENDANT THE OPPORTUNITY TO CALL THREE WITNESSES AT THE PRELIMINARY HEARING?

"III. WAS THE DENIAL BY THE MAGISTRATE EVEN ERROR UNDER WYOMING CASELAW?"

This appeal is taken from a conviction of murder in the second degree charged in violation of § 6–2–104, W.S.1977.[1] After the return of a guilty verdict by the jury, the appellant was sentenced to a term of not less than 20 years nor more than 27 years in the Wyoming State Penitentiary.

There is no question raised in this case about the fact that the victim, Cary Connelly, was killed by a stab wound and the fact that the stab wound was inflicted by the appellant. At least from the time of the first contact by law enforcement officers the appellant took the position that the homicide had been committed in self-defense by him while he was acting under a belief that his life was in danger. The appellant so testified at the trial of this case, and consequently the only question really presented in the entire case was whether the homicide was justified.

The underlying facts may be briefly stated. On the night that Cary Connelly was killed a party was being held in a house in the southern part of the City of Cheyenne, Wyoming. The imbibing of beer at this party was extensive, as is probably true at most "keggers," which is the term used to describe a party in which the refreshments consist primarily of a keg of beer. During the course of the evening the appellant and Connelly quarreled; this quarrel apparently evolved from Connelly's assertion that the appellant had taken his cigarettes. The testimony of the witnesses describes several confrontations between the two and sets forth assaults and simple batteries involving these two. These consisted of such

events as the swinging of a dog chain by the appellant at Connelly; the pushing of the appellant by Connelly, even down to the ground; and one witness saw a black pot being swung by the appellant. At one point during the evening the appellant went to his own home. It appears that he wanted to get his baseball bat to defend himself. Connelly and another person apparently prevented him from entering his own home, and he returned to the party. During the course of the evening one witness saw the appellant with a knife in his hand, and at that time the appellant indicated he was going to inflict revenge upon a person he believed had called him a derogatory name while he was using the bathroom.

As we have noted, the appellant admitted the stabbing. The eye-witness who observed the most about the killing stated that Connelly was standing by the television in the living room and that the appellant went into the kitchen. He was not followed into the kitchen by Connelly. In the kitchen the appellant opened a drawer and got out a knife. He twirled it and then went back into the living room. He there went toward Connelly and stabbed him in the chest. After Connelly fell to the ground he stabbed him again in the buttocks. The same witness had described an earlier event during the course of which the appellant said to the victim, "you're dead."

While the record is somewhat incomplete with respect to the physical layout of the premises where the killing occurred, it does appear that from a porch there were entrances into the kitchen and into the living room. The living room, where the killing occurred, and the kitchen were connected by a doorway. The clear inference from the record is that the appellant was not under attack by the victim when he went into the kitchen to obtain the knife, and he could have exited the house by means of the door from the kitchen onto the porch. The record also establishes that the appellant

---

1. Section 6–2–104, W.S.1977, provides as follows:

"Whoever purposely and maliciously, but without premeditation, kills any human be-

ing, is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life."

stood only about 5 feet 3 inches and weighed about 90 pounds, while Connelly weighed about 190 pounds, which were distributed over a 6 foot 3 inch frame. The disparity in physical size was impressive to all.

It is in the context of this background that the appellant insists that he committed the homicide in self-defense. While our reading of the record leaves us skeptical as to the validity of the defense under these circumstances, we recognize that it was the duty of the district court to give an instruction on self-defense because that was the appellant's theory of the case. We previously have held that a defendant in a criminal case is entitled to an instruction as to his theory of the case if there is evidence to support it. *Grable v. State,* Wyo., 649 P.2d 663 (1982); *Goodman v. State,* Wyo., 573 P.2d 400 (1977); *Benson v. State,* Wyo., 571 P.2d 595 (1977); *Thomas v. State,* Wyo., 562 P.2d 1287 (1977); *Blakely v. State,* Wyo., 474 P.2d 127 (1970); and *State v. Hickenbottom,* 63 Wyo. 41, 178 P.2d 119 (1947).

While the only real evidence in the record of any circumstances that would suggest self-defense comes from the testimony of the appellant, that is sufficient to raise the issue of self-defense consistent with his theory.

The instruction on self-defense which was given by the district court was taken from the Wyoming Pattern Jury Instructions Criminal, No. 5.207, and it reads as follows:

"Even if the defendant had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, he was justified in using deadly force to repel the danger only if he retreated as far as he safely could before doing so. The law requires a person to retreat rather than to take the life of his adversary if there was a convenient mode of retreat without increasing his peril or apparent peril. To excuse a failure to retreat, it is necessary the defendant's peril would be increased, or that it reasonably appeared that it would be increased by retreat. If you

find that the defendant could have safely retreated but failed to do so, the defendant cannot rely on the justification of self defense."

This instruction was objected to by the appellant, and he proposed Instruction No. D, which reads as follows:

"The defendant has a right to go where he will. If the defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of serious bodily harm, and that deadly force was necessary to repel such danger, he was not required to retreat from a place where he is legally entitled to be. He was entitled to stand his ground and use such force as was reasonably necessary under the circumstances to save his life or protect himself from serious bodily harm.

"The defendant had no duty to retreat if he had even the slightest doubt that he could retreat in complete safety. Even the slightest doubt, if reasonable, was enough to justify his standing his ground. In determining whether the defendant's doubt was reasonable you may make every allowance for the situation in which Steve Garcia was placed by Cary Connelly."

Appellant contends that his proffered instruction represents what he urges to be a majority view in other jurisdictions in the United States. He relies on such cases as *State of Arizona v. Jackson,* 94 Ariz. 117, 382 P.2d 229 (1963); *People v. Clark,* 130 Cal.App.3d 371, 181 Cal.Rptr. 682 (1982); *Boykin v. People,* 22 Colo. 496, 45 P. 419 (1896); *Enyart v. People,* 67 Colo. 434, 180 P. 722 (1919); *State v. Hatch,* 57 Kan. 420, 46 P. 708 (1896); *State v. Gardner,* 96 Minn. 318, 104 N.W. 971 (1905); *State v. Bartlett,* 170 Mo. 658, 71 S.W. 148 (1902); *State v. Sunday,* Mont., 609 P.2d 1188 (1980); *State v. Grimmett,* 33 Nev. 531, 112 P. 273 (1910); *State v. Abbott,* 36 N.J. 63, 174 A.2d 881 (1961); *Foster v. State,* 8 Okl.Cr. 139, 126 P. 835 (1912); and *Fowler v. State,* 8 Okl.Cr. 130, 126 P. 831 (1912). In his brief the appellant quotes from Mischke, Criminal Law—Homicide—Self-Defense—Duty to

Retreat, 48 Tenn.L.Rev. 1000 (1981). We are impressed with the fact that this theory seems to depend upon a person being without fault in bringing on an assault and may, according to some authorities, be restricted to his home or curtilage. While some courts have extended to other places the area within which the defendant can claim the benefit of the rule, we do not perceive the circumstances of this case as those in which the appellant can claim to be without fault.

■ The appellant participated fully in the prior quarreling and conflict with Connelly. When he went into the kitchen to obtain the knife he had the option of walking on out the door and going peacefully to his own home. There is nothing to indicate that his life was in imminent jeopardy at that time except his claim that it was. Instead he chose to take a knife from a kitchen drawer, return to the living room, and fatally stab Connelly. While the appellant may want to believe that those circumstances constitute self-defense, the law should not justify him in this aberrant style of thinking.

This court previously has considered the defense of self-defense in homicide cases in a number of instances. *Scheikofsky v. State,* Wyo., 636 P.2d 1107 (1981); *Leeper v. State,* Wyo., 589 P.2d 379 (1979); *Searles v. State,* Wyo., 589 P.2d 386 (1979); *Cullin v. State,* Wyo., 565 P.2d 445 (1977); *Reeder v. State,* Wyo., 515 P.2d 969 (1973), mandamus denied 419 U.S. 1018, 95 S.Ct. 509, 42 L.Ed.2d 303 (1974); *Nunez v. State,* Wyo., 383 P.2d 726 (1963); *Cavaness v. State,* Wyo., 358 P.2d 355 (1961); *State v. Helton,* 73 Wyo. 92, 276 P.2d 434 (1954); *State v. Goettina,* 61 Wyo. 420, 158 P.2d 865 (1945); *Espy v. State,* 54 Wyo. 291, 92 P.2d 549 (1939); *State v. Bristol,* 53 Wyo. 304, 84 P.2d 757 (1938); *State v. Radon,* 45 Wyo. 383, 19 P.2d 177 (1933); *State v. Flory,* 40 Wyo. 184, 276 P. 458 (1929); *State v. Sorrentino,* 31 Wyo. 129, 224 P. 420 (1924); *Durham v. State,* 29 Wyo. 85, 210 P. 934 (1922); *Loy v. State,* 26 Wyo. 381, 185 P. 796 (1919); *Parker v. State,* 24 Wyo. 491, 161 P. 552 (1916); *Palmer v. State,* 9 Wyo.

40, 59 P. 793, 87 Am.St.Rep. 910 (1900); and *Ross v. State,* 8 Wyo. 351, 57 P. 924 (1899). Self-defense also has been asserted in assault and battery cases. *Harries v. State,* Wyo., 650 P.2d 273 (1982); *Kwallek v. State,* Wyo., 596 P.2d 1372 (1979); *Hurst v. State,* Wyo., 519 P.2d 971 (1974); *Mewes v. State,* Wyo., 517 P.2d 487 (1973); *Brown v. State,* 80 Wyo. 12, 336 P.2d 794 (1959); *State v. Franklin,* 70 Wyo. 306, 249 P.2d 520 (1952); and *Delaney v. State,* 14 Wyo. 1, 81 P. 792 (1905).

We can identify several articulations of the rule of self-defense, and it may be that they are not definitive.

" * * * Self-defense will justify a homicide when a reasonable person deems it necessary in order to avoid infliction of death or great bodily harm upon his or her person. To justify a homicide on this ground, it must appear that the defendant was in great peril of death or serious bodily harm, or had reasonable grounds for so believing. It must appear that the killing was a necessary and reasonable means of avoiding the threatened harm, and the facts and circumstances surrounding the event must be such as to afford such grounds for that belief." *Leeper v. State,* supra, 589 P.2d at 382.

" * * * It has been said several times in this jurisdiction that to justify a homicide on the ground of self-defense, it must appear the defendant was in great peril of death or serious bodily harm, or had reasonable ground for believing and did believe he was in such peril, and the killing was necessary to avert such peril, and no other reasonable means of avoiding it was open to him. * * * " *Nunez v. State,* supra, 383 P.2d at 727.

"The law of self defense is founded upon necessity. To justify a homicide, it must appear that the slayer was in great peril of death or serious bodily harm, or had reasonable ground for believing and did believe, that he was in such peril and that the killing was necessary to avert such peril, and that no other reasonable means of avoiding it was open to him. * * * "

*Durham v. State,* supra, 29 Wyo. at 96, 210 P. at 938.

" * * * That to justify the taking of human life in self-defense, it must appear from the evidence that the defendant not only really, and in good faith, endeavored to decline any conflict with the deceased, and to escape from his assailant, if he had the opportunity so to do, if he was assailed, before he fired the shot in question, but it must also appear that the circumstances were such as to excite the fears of a reasonable person that the deceased intended to take his life, or to inflict upon him great bodily harm, and that the defendant really acted under the influence of such fears, and not in a spirit of revenge. * * * " *Ross v. State,* supra, 8 Wyo. at 383, 57 P. at 931.

▮ This court has addressed the socalled "duty to retreat" on several occasions. *State v. Bristol,* supra, 53 Wyo. at 319–330, 84 P.2d at 762–766; *State v. Flory,* supra, 40 Wyo. at 196–203, 276 P. at 461–463; *State v. Sorrentino,* supra, 31 Wyo. at 136–139, 224 P. at 422–423; *Delaney v. State,* supra, 14 Wyo. at 10–12, 81 P. at 794; and *State v. Palmer,* supra, 9 Wyo. at 44–48, 59 P. at 794–796. In general, it can be concluded from these prior discussions that an individual who is without fault in bringing about the incident in which he kills his assailant need not restrict his freedom of movement to go where he has a right to be. The "duty to retreat," where it prevails, is applied in cases of actual assault. Under the circumstances of this case the following comment is instructive:

" * * * [A] person who provokes or brings on the difficulty in which he kills his assailant cannot invoke the right of self-defense, unless he in good faith retreats as far as he safely can, making that fact manifest to his adversary. * * " *State v. Flory,* supra, 40 Wyo. at 199, 276 P. at 462.

Given these prior adjudications with respect to self-defense, the law in the State of Wyoming requires that prior to resorting to deadly force a defendant has a duty to pursue reasonable alternatives under the circumstances. Among those reasonable alternatives may be the duty to retreat. Because that opportunity was so obviously available to the appellant in this case we hold that there was no error in the form of instruction which was given by the district judge. It might not be appropriate in all other cases but it was appropriate in this case. The circumstances would not justify the instruction requested by the appellant.

"THE COURT: No, the defense won't call anybody. I'm not going into the other half of this trial, I'm going to hear probable cause, and that's it.

"MR. HELLING: Your Honor, for the record I would like to move for a mistrial on the grounds that we're being denied our constitutional right to confront the witnesses. I think it's clear that we do have a right to call witnesses at a preliminary hearing. I would move for a dismissal and a mistrial based on that.

"MR. FORWOOD: I would respond by stating this is not a trial and we're not, the sixth amendment right does not attach to the preliminary hearing. There is no such right to confront.

"THE COURT: Well, you're on the record, Mr. Helling.

"MR. HELLING: Thank you, Your Honor.

"Your Honor, for the record, could I let the record reflect that I also intended to call Mr. David VanDiviner and Mr. Joseph Michael Hernandez.

"THE COURT: For what purpose?

"MR. HELLING: For the purpose of finding out what they saw, as to what happened that night.

"THE COURT: Well, they'll be available to you, Mr. Helling. They will be available to you after this is over, so you can reinterview them then."

No further offer of proof was made by the appellant at this time.

We begin our analysis of the issue presented by noting the prior rulings of this court regarding the nature of a preliminary hearing. We often have stated that the true constitutional purpose of a preliminary examination is to obtain a determination by a neutral, detached fact finder that there is probable cause to believe a crime has been committed and that the defendant committed it. Rule 7(b), W.R.Cr.P.; *Thomas v. Justice Court of Washakie County,* Wyo., 538 P.2d 42 (1975). Recently, in *Wilson v. State,* Wyo., 655 P.2d 1246, 1251 (1982), we stated:

" * * * A preliminary hearing is not designed to be a dress rehearsal for trial. Its only purpose is to determine whether there is a sound basis for continuing to hold the accused in custody, to make sure that he is not being held on some capricious or nebulous charge."

See also *Haight v. State,* Wyo., 654 P.2d 1232 (1982); *Weddle v. State,* Wyo., 621 P.2d 231 (1980); *Snyder v. State,* Wyo., 599 P.2d 1338 (1979); and *Thomas v. Justice Court of Washakie County,* Wyo., supra.

Rule 7(b), W.R.Cr.P., the governing rule upon which appellant relies, provides:

"(b) *Probable cause finding.*—If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the commissioner shall forthwith hold him to answer in district court. The finding of probable cause may be based upon hearsay evidence in whole or in part. *The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf.* Objections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary examination. Motions to suppress must be made to the trial court as provided in Rule 16 and Rule 40(e)." (Emphasis added.)

■ The precise question raised in this case is one of first impression in this court. In a recent decision we held that there was

no denial of the Sixth Amendment right to confront witnesses when a county court denied a motion for a continuance so that the defendant could subpoena the complaining witness to testify at the preliminary hearing in a sexual assault prosecution when that witness was not called by the State. *Haight v. State,* supra, 654 P.2d at 1234–1235. In *Weddle v. State,* supra, 621 P.2d at 231, we held that it was not improper to limit the defendant's right of cross-examination of the State's witnesses to the scope of direct examination. We have noted that while some discovery is the inevitable by-product of a preliminary hearing, discovery is not the purpose of the hearing. *Wilson v. State,* supra; *Haight v. State,* supra; and *Weddle v. State,* supra. The prosecution must sustain its burden of establishing probable cause during the preliminary hearing, but ample opportunity for pretrial discovery is provided for by our rules. *Wilson v. State,* supra, 655 P.2d at 1254; *Weddle v. State,* supra, 621 P.2d at 239.

■ Rule 7(b), W.R.Cr.P., provided appellant the right to subpoena and call witnesses during his preliminary hearing. See *Haight v. State,* supra, 654 P.2d at 1236; *Thomas v. Justice Court of Washakie County,* supra, 538 P.2d at 49. This right, however, is not absolute. It must be viewed in light of the constitutional purpose of the preliminary hearing. As stated in a decision under Rule 5.1, F.R.Cr.P., the federal counterpart to our rule:

" * * * [A] defendant's right to call witnesses in his own behalf does not remove from the Commissioner all supervision over the calling of witnesses, nor does it confer upon the defendant the right to call anyone and everyone as a witness, any more than the right to cross-examine witnesses confers an absolute right to cross-examine witnesses upon anything and everything * * *." *United States v. Bates,* 287 F.Supp. 657, 660 (E.D.Tenn. 1968).

See also, *United States v. Wilkins,* 422 F.Supp. 1371 (E.D.Pa.1976), affirmed 547 F.2d 1166 (3rd Cir.1976); *Rex v. Sullivan,* 194 Colo. 568, 575 P.2d 408 (1978); and

*State v. Adams,* 218 Kan. 495, 545 P.2d 1134 (1976). In this case the stated purpose for which appellant sought to introduce testimony from the witnesses whom he had subpoenaed was "finding out what they saw, as to what happened that night." This purpose fits within the realm of discovery rather than the determination of probable cause, and invoked the discretion of the county court judge.

█ In the context of evidentiary rulings at trial, this court has long adhered to the doctrine that a sufficient offer of proof is necessary so that this court may be adequately apprised of the nature of the excluded testimony. *Padilla v. State,* Wyo., 601 P.2d 189 (1979); *Elliott v. State,* Wyo., 600 P.2d 1044 (1979); *Montez v. State,* Wyo., 573 P.2d 34 (1977); *Pack v. State,* Wyo., 571 P.2d 241 (1977); *State v. Goettina,* supra; *State v. Rouse,* 58 Wyo. 468, 134 P.2d 1116 (1943); *Jenkins v. State,* 22 Wyo. 34, 134 P. 260, reh. denied 135 P. 749 (1913); and *McGinness v. State,* 4 Wyo. 115, 31 P. 978, reh. denied 53 P. 492 (1893). The dual purpose of this requirement is to enable the trial court to be fully advised in the exercise of its discretion regarding the admission of evidence, and to enable the reviewing court to determine if prejudicial error resulted from the exclusion of the proffered testimony.

█ In the context of this case we adopt the suggestion that it is incumbent upon counsel to explain the relevance to the issue of probable cause of the testimony he seeks to introduce at the preliminary hearing. See *McDonald v. District Court In and For Fourth Judicial District,* 195 Colo. 159, 576 P.2d 169 (1978). No such attempt was made in the present case. Appellant speculates that the testimony sought to be elicited could have led to the reduction in the charges against him or their dismissal. He should have explained that position to the judge in the county court. We note that two of the three witnesses appellant subpoenaed to testify at the preliminary hearing were present and did testify at his trial at which he was convicted of the charge of second degree murder upon which he had been bound over by the county court judge. Under the present circumstances, we hold that no error occurred in refusing to allow the subpoenaed witnesses to testify at the preliminary hearing.

Finding no prejudicial error, the conviction of the appellant is affirmed.